UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

JON LEAKE,

                Plaintiff,

    v.

GARDEN CITY UNION FREE SCHOOL
DISTRICT BOARD OF EDUCATION,

                Defendant.

**MEMORANDUM AND ORDER**
23-CV-4243 (RPK) (JMW)

-----------------------------------------------------------x

RACHEL P. KOVNER, United States District Judge:

    Plaintiff Jon Leake brings this action against his employer, defendant Garden City Union Free School District Board of Education ("the school district"), alleging disability discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and disability discrimination and retaliation in violation of the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.* The school district has moved to dismiss the complaint. For the reasons set forth below, plaintiff's ADA claim is dismissed because it fails to state a claim, and plaintiff's NYSHRL claims are dismissed without prejudice with leave to refile in state court.

## BACKGROUND

    The following facts are drawn from the amended complaint and are assumed true for the purposes of this order.

    Plaintiff began working as a physical education teacher and athletic coach for the school district in 1998. Am. Compl. ¶ 10 (Dkt. #15).

1

In June 2013, plaintiff testified on behalf of another teacher who brought a sexual harassment and gender discrimination case against Linda Norton, a principal in the school district. *Id.* ¶ 14.  In August 2013, plaintiff's principal, Eileen Vota, retaliated against plaintiff for his participation in the lawsuit. *Id.* ¶ 16.  Soon afterward, plaintiff "was diagnosed with acute panic disorder with anxiety and agitation." *Id.* ¶ 17.  In November 2013, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). *Id.* ¶ 18.  After the EEOC provided plaintiff him with a right-to-sue letter, plaintiff filed a lawsuit in federal court but voluntarily dismissed the action a few months later. *Id.* ¶¶ 18, 21.

In June 2014, the school district required plaintiff to undergo a psychiatric evaluation. *Id.* ¶ 19.  The psychiatrist who completed the evaluation "did not disagree" that plaintiff "suffered from acute panic disorder with anxiety and agitation." *Ibid.*  The psychiatrist also recommended a "change in schools [with a] new administration and principal to reduce perceived harassment, stress, and anxiety related symptoms." *Ibid.*  In August 2014, plaintiff requested a transfer out of the Stewart School, but the school district denied that request. *Id.* ¶ 20.

By August 2021, plaintiff was no longer teaching at the Stewart School and was instead teaching at the Hemlock School and the Locust School. *Id.* ¶ 24.  That same month, Ms. Vota was "assigned to the Locust School as the new [p]rincipal." *Id.* ¶ 25.

In September 2021, Audrey Bellovin, the principal of the Hemlock School, told plaintiff that "she was going to be the Administrator who gets him fired." *Id.* ¶ 26.  "Soon after," the school district "began taking adverse action against [plaintiff]" during the 2021–22 school year. *Id.* ¶ 29. Specifically, plaintiff alleges that:

- He "received his first unsatisfactory [t]eacher's observation," *id.* ¶ 30;
- Ms. Bellovin "enter[ed] [plaintiff's] classroom on several days, sometimes 7 to 10 times a day, holding a clipboard and taking notes" because "she knew [plaintiff] suffered from

acute panic disorder with anxiety and agitation" and wanted "to trigger a panic attack," *id.* ¶ 31;

- Ms. Bellovin "question[ed] [plaintiff] when he left the building during a break," *id.* ¶ 32, told him that he could not "leave the building after his last class to go coach a [d]istrict sport," *id.* ¶ 37, or "during his prep time," *id.* ¶ 38, even though other teachers were not subjected to the same restrictions, *id.* ¶¶ 32, 37, 38;

- Ms. Bellovin "submitted a counseling letter to [plaintiff] referring to complaints made by parents of students in his classroom," even though the complaints "were without factual basis," *id.* ¶ 33; and

- Ms. Bellovin "videotap[ed] [plaintiff] with her cellphone" and told him "she had been watching him the whole school year," *id.* ¶ 35.

In February 2022, plaintiff told Nanine Mclaughlin, an assistant superintendent, that he intended to file an ADA claim. *Id.* ¶ 34. Ms. Mclaughlin told plaintiff "not to file and that she would transfer him at the end of the year," but she did not do so. *Ibid.*

In August 2022, plaintiff requested a transfer as "a reasonable accommodation pursuant to the ADA." *Id.* ¶ 39. His neurologist "prepared an ADA Physician Questionnaire in support of [plaintiff's] request," which "informed the [d]istrict that [plaintiff] was suffering from marked anxiety, panic attacks and feelings of persecution." *Id.* ¶ 40. Ms. Mclaughlin denied plaintiff's transfer request. *Id.* ¶ 41.

In October 2022, the school district fired plaintiff from coaching the eighth-grade volleyball team, "which he had coached for many years." *Id.* ¶ 42. The school district's athletic director told plaintiff he was fired for "[b]ad attendance." *Ibid.* Plaintiff told the athletic director "that the majority of his absences were a direct result of his disabilities" and "that even though he missed part of the day, he was able to fulfill his coaching responsibilities." *Ibid.*

Plaintiff filed a complaint with the EEOC, which provided him with a right-to-sue letter. *Id.* ¶¶ 43–44. Plaintiff then filed this lawsuit. *Id.* ¶ 44.

The school district sought a pre-motion conference in anticipation of filing a motion to dismiss the complaint. *See* Def.'s July, 7, 2023, Letter (Dkt. #9). At the conference, plaintiff requested leave to amend his complaint to address the deficiencies identified in the school district's letter. *See* July 25, 2023, Conf. Audio Recording 7:06. After leave was granted, plaintiff filed the operative amended complaint. *See* Am. Compl.

The amended complaint alleges that (i) the school district violated the ADA by denying him a reasonable accommodation for his disability and subjecting him to other adverse employment actions because of his disability, *id.* ¶¶ 48–59, and (ii) the school district violated the NYSHRL by denying him a reasonable accommodation for his disability and retaliating against him for testifying against Ms. Norton, *id.* ¶¶ 60–68. The amended complaint does not include a claim for retaliation under the ADA. *See generally id.*

The school district has moved to dismiss the amended complaint. *See* Mot. to Dismiss (Dkt. #22). It argues that (i) plaintiff has failed to state a failure-to-accommodate claim or any other disability discrimination claim under the ADA, and (ii) plaintiff has failed to state a discrimination or retaliation claim under the NYSHRL. *See id.* at 5–17. In response, plaintiff argues that he has adequately stated an ADA claim under theories other than a failure to accommodate, but he does not defend his failure-to-accommodate claim. *See generally* Pl.'s Opp'n (Dkt. #23).

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." To avoid dismissal on that basis, a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ibid.* (discussing Fed. R. Civ. P. 8). The facial "plausibility standard is not akin to a probability requirement," but it requires a plaintiff to allege sufficient facts to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ibid.* (quotation marks omitted) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556–57 (2007)). "A well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof [of the facts alleged] is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (quotation marks omitted).

## DISCUSSION

The school district's motion to dismiss plaintiff's ADA claims is granted. And because plaintiff's federal law claims are dismissed, I decline to exercise supplemental jurisdiction over plaintiff's state law claims.

### I. Plaintiff's ADA Claims Are Dismissed.

Plaintiff has failed to adequately plead a claim that the school district discriminated against him based on his disability, and he has abandoned any claim that the school district failed to accommodate his disability in violation of the ADA.

### A. Plaintiff has failed to plausibly allege that the school district discriminated against him because of his disability.

Plaintiff has failed to adequately plead a claim for disability discrimination under the ADA because he has not plausibly alleged that the school district discriminated against him because of his disability. "To state a claim for discrimination under the ADA, a plaintiff must allege facts which plausibly suggest, inter alia, that [he] 'suffered adverse employment action because of his disability." *Giambattista v. Am. Airlines, Inc.*, 584 F. App'x 23, 25 (2d Cir. 2014) (alterations omitted) (quoting *Giordano v. City of New York*, 274 F.3d 740, 747 (2d Cir. 2001)). In other

5

words, a plaintiff must allege "some minimal evidence supporting an inference that [his] employer acted with discriminatory motivation." *Dawson v. N.Y.C. Transit Auth.*, 624 F. App'x 763, 766 (2d Cir. 2015).

Here, plaintiff does not set forth any facts supporting the inference that the employer actions of which he complains were *because of* his disability. Plaintiff alleges, for instance, that the school district required him "to be supervised by [Ms.] Vota" after it assigned her to be the principal of the Locust School. Am. Compl. ¶ 28; *see* Pl.'s Opp'n 7. Even assuming Ms. Vota's assignment constitutes an adverse employment action, nothing in the amended complaint indicates that the school district took that action because of plaintiff, let alone because of plaintiff's disability. *See generally* Am. Compl. Plaintiff also alleges that he received an "unsatisfactory [t]eacher's observation." *Id.* ¶ 30; *see* Pl.'s Opp'n 7. But, once again, nothing in the amended complaint indicates that plaintiff received the unsatisfactory observation because of his disability. Am. Compl. ¶ 30. Indeed, the amended complaint provides no further detail on the topic, other than the fact that plaintiff had never before received an unsatisfactory observation. *See ibid.*; *see also, e.g.*, *Berkery v. Archdiocese of Hartford*, 352 F. App'x 487, 490 (2d Cir. 2009) (affirming dismissal of ADA claim where plaintiff "pleaded no facts" that "link[ed] the [defendant's] decision to his disability or support an inference of disability discrimination"); *Lucas v. Apple Food Serv. of N.Y., LLC*, No. 15-CV-4007 (SJF) (AKT), 2015 WL 6507495, at *3 (E.D.N.Y. Oct. 27, 2015) (dismissing ADA claim where "the complaint fail[ed] to plead any facts linking defendant's conduct . . . to plaintiff's . . . pregnancy" and collecting similar cases).

Similarly, plaintiff has failed to plausibly allege that the school district was motivated by plaintiff's disability in removing plaintiff from his position as coach of the eighth-grade volleyball team. Plaintiff does not suggest that the school district or its employees made any statements

6

linking the removal to plaintiff's disability. To the contrary, plaintiff alleges that the school district's athletic director explained that the firing was a result of "[b]ad attendance," Am. Compl. ¶ 42. And plaintiff does not dispute that he did in fact have absences from his position. *See ibid.* While plaintiff himself alleges that he previously received awards for his coaching, and that "he was able to fulfill his coaching duties" notwithstanding his absences, *ibid.*, those facts do not raise an inference that the school district's actual motivation for firing plaintiff was his disability, rather than his attendance. Nor could plaintiff's statements *after* his removal informing the athletic director that plaintiff's absences were linked to disability support an inference that the school district was motivated by plaintiff's disability in removing him from his position. *See Clarke v. White Plains Hosp.*, 650 F. App'x 73, 75 (2d Cir. 2016) (holding that a plaintiff who failed "to allege that [her employer] knew that [her] absences were due to her back injury" and alleged "only that she attempted, *after* [her employer] had decided to terminate her employment, to explain that these absences should not have been considered unexcused," had "provided no basis to infer any causal connection between that knowledge and her termination").

Plaintiff also fails to plead any facts supporting the inference that any of the other adverse actions he complains of were motivated by discriminatory animus. He alleges that Ms. Bellovin threatened to fire him, frequently entered his classroom with a clipboard in order to "trigger a panic attack," prohibited him from leaving the school building during breaks and after classes when other teachers were allowed to do so, videotaped him on her cellphone, and "submitted a counseling letter to [him]." Am. Compl. ¶¶ 31–33, 37–38; *see* Pl.'s Opp'n 10. And he asserts that Ms. Bellovin's conduct, in combination with the actions described above, created a hostile work environment. *See* Am. Compl. ¶ 55; *see also* Pl.'s Opp'n 10. Assuming those actions amounted to a hostile work environment, the amended complaint is devoid of any facts linking them to his

7

disability. *See generally* Am. Compl; *see also, e.g.*, *Zabar v. N.Y.C. Dep't of Educ.*, No. 18-CV-6657 (PGG), 2020 WL 2423450, at *6 (S.D.N.Y. May 12, 2020) (dismissing ADA hostile-work-environment claim where the complaint provided only "a chronology of alleged adverse actions" without any "facts linking [p]laintiff's disability to the alleged adverse actions"). In sum, plaintiff has failed to allege that he suffered any adverse employment actions because of his disability.

Finally, plaintiff cannot avoid dismissal of his ADA claim by advancing a retaliation theory. The amended complaint contends that the school district violated the ADA only by failing to provide him with a reasonable accommodation and subjecting him to other adverse actions because of his disability. *See* Am. Compl. ¶¶ 48–59. While plaintiff also raises a claim for retaliation in his amended complaint, that claim is brought only under the NYSHRL. *See id.* ¶¶ 60–64. Accordingly, plaintiff cannot avoid dismissal of his ADA claim based on the theory that the school district retaliated against him for engaging in activity that is protected under the ADA. *See Mathie v. Goord*, 267 F. App'x 13, 14 (2d Cir. 2008) (affirming district court's decision not to consider new claims raised in opposition to a motion to dismiss).

### B. Plaintiff's failure-to-accommodate claim is dismissed as abandoned.

Though "[t]he ADA . . . require[s] an employer to afford reasonable accommodation of an employee's known disability," *Noll v. Int'l Bus. Machs. Corp.*, 787 F.3d 89, 94 (2d Cir. 2015), plaintiff has abandoned any claim that the school district failed to do so when it denied his transfer request. A federal court may deem a claim abandoned when a defendant moves to dismiss that claim and the plaintiff fails to address in his opposition papers the defendant's arguments for dismissal. *See, e.g.*, *Malik v. City of New York*, 841 F. App'x 281, 284 (2d Cir. 2021); *Laface v. E. Suffolk Boces*, 349 F. Supp. 3d 126, 161 (E.D.N.Y. 2018); *DoubleLine Cap. LP v. Odebrecht Fin., Ltd.*, 323 F. Supp. 3d 393, 449 (S.D.N.Y. 2018). That standard is met here. Plaintiff's

8

opposition does not address the school district's contention that plaintiff has not sufficiently alleged a failure-to-accommodate claim because plaintiff failed to allege that there was any open position to which he could be transferred. *See generally* Pl.'s Opp'n. Plaintiff's failure-to-accommodate claim is accordingly dismissed as abandoned.

## II. I Decline to Exercise Supplemental Jurisdiction Over Plaintiff's State Law Claims.

Because I have dismissed all the federal claims in this action, I decline to retain jurisdiction over plaintiff's state law claims. Under 28 U.S.C. § 1367(c)(3), "a district court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction." Four factors bear on whether it is appropriate to exercise supplemental jurisdiction: "judicial economy, convenience, fairness, and comity." *Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 81 (2d Cir. 2018). As a general matter, where "a plaintiff's federal claims are dismissed before trial, the state claims should be dismissed as well." *Brzak v. United Nations*, 597 F.3d 107, 113–14 (2d Cir. 2010); *see Pension Benefit Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 727 (2d Cir. 2013). Plaintiff did not address supplemental jurisdiction in his briefing, let alone provide a persuasive reason to depart from the usual practice of declining to exercise supplemental jurisdiction once federal claims are dismissed. Accordingly, I decline to exercise supplemental jurisdiction over plaintiff's state law claims.

## CONCLUSION

For the foregoing reasons, the school district's motion to dismiss plaintiff's ADA claims is granted. Since plaintiff's federal law claims are dismissed, the Court will not exercise supplemental jurisdiction over plaintiff's state law claims. Plaintiff's state law claims are therefore dismissed without prejudice, so that plaintiff may pursue those claims in state court. Because plaintiff already amended his complaint to address the deficiencies identified in the school

9

district's pre-motion conference letter, plaintiff is denied further leave to amend. The Clerk of Court is respectfully directed to enter judgment and close this case.

SO ORDERED.

*/s/ Rachel Kovner*
RACHEL P. KOVNER
United States District Judge

Dated: July 1, 2024
      Brooklyn, New York